Case number 23-3870, United States of America v. Bernhard Jakits, oral argument, not to exceed 15 minutes per side. Tillman, James Finley, for the appellant. You may proceed. Mr. Finley, if you want any rebuttal, please let us know. Thank you. I have reserved five minutes rebuttal, Your Honor. Thank you. Again, I'm Tillman Finley on behalf of the appellant, Bernhard Jakits, is the pronunciation. In this case, a well-founded moral disapproval of any scenario in which minors are discussing or sending nude selfies clouded the government and the jury's judgment regarding the application of the federal statutes that prohibit the production of child pornography and exploitation of minors. The evidence presented at trial in this case was only sufficient to allow the jury to conclude a 15-year-old girl sent Mr. Jakits a variety of selfies, some of which were nude, either at his behest or with his agreement, and then via text messages and phone calls, Mr. Jakits asked the girl and her sister to join a FaceTime call while naked, which obviously was inappropriate, but it falls short of violating the federal statutes with which Mr. Jakits was charged because none of the images depicted sexually explicit conduct, as that term is defined in 18 U.S.C. section 2256. Mr. Jakits never asked the 15-year-old girl or her sister to engage in sexually explicit conduct or sexual activity. Can you start with how you would define that term? Sexually explicit conduct is defined by statute in a definition adopted by Congress decades ago when it was originally enacting these provisions, and that defines sexually explicit conduct as five things, sexual intercourse, bestiality, masturbation, sadistic or masochistic abuse, or lascivious exhibition of the anus, genitals, or pubic area. Now, obviously none of the first four have any application in this case, and the argument is that the fifth prong does, but the structure of the statute makes clear it's an objective standard looking at the image based on the image itself, not how a viewer might react to it or even what the photographer was thinking, but instead what is the conduct being depicted by the image? We go through the dose factors, right? The dose factors dating back to the 80s are relevant factors for consideration which this court has allowed, okay, yeah, these are relevant factors. The problem is they don't purport, by their terms or otherwise, to actually define what a lascivious exhibition is. They merely give factors that one can consider in determining. Let me ask one question. Let's talk about the actual photographs. At least, I think, six of the photographs had photographs depicting one of the minors face, breasts, rear end, and genitalia. So your argument is that those pictures would not fit within the definition of lascivious? That's correct, yes, your honor, because the statute is clear. It does not prohibit the display or any image where pubic area or genitalia are merely visible. What they prohibit is a lascivious exhibition of genitals, yes, correct. So it has to be an exhibition and it has to be lascivious and Congress adopted that specific statutory definition in light of the Supreme Court ruling initially in Miller, which was then followed up by New York v. Fulber, which dealt with a New York statute that used the term lewd exhibition. And those cases, you know, Congress adopted this statutory language with full knowledge and, in fact, guided by those decisions. Judge Cole described one of the pictures. Are there any circumstances in which that picture can be a lascivious display of genitalia? Not the pictures at issue in this case. I do not think, as a matter of law, that under this court's precedent, even in Brown, even if we apply the DOS factors in isolation of the actual meaning. What would need to be in the pictures here? You would need something connoting a sexual act, you know, either mimicking or maiming a sexual act, touching of the genitals or juxtaposition of an object in a way that, you know, that connotes a sexual act. And the reason for that is drawn directly from Supreme Court precedent, dating back to Fulber and continued in the excitement video case from 1994 and Williams as recently as 2008, in which the court has made clear that this term, lascivious exhibition, passes constitutional muster because. Those factors don't define lascivious exhibition. They do not. Whether they come into play when we're looking at. I think what an appropriate instruction to the jury would have been statute prohibits the lascivious exhibition of the genitals. Here's what makes an exhibition lascivious. Here are factors you can consider in determining whether that applies to the images at issue in this case. That, because if we're just given a list of factors, but we're not telling them what it is that they're determining, then there's no direction to the consideration of the factors and you get what happened in this case, which is obviously an inappropriate situation that's happening here. And, oh, of course this is bad. So of course it must be, you know, because the jury is not guided by the actual statutory term that makes this whole regime constitutional in the first place, in which Congress adopted the statute very mindful of that very fact. So, well, you know, as I understand it, our court has adopted the dust factors in Daniels. Yes. So we, you know, no one factor controls over another factor. But I guess I'm having a tough time appreciating where the distinction lies here. Are you saying between lascivious and lewd are to be read differently? No, the Supreme Court has read, expressly read lascivious and lewd as synonymous.  You know, lewd is verbal, lascivious is excitement video, which. So what, once again, what would, I guess following up on Judge Mathis' question, what would cross the line here? Some sort of other sexual imagery? Yes. Per Justice Scalia's language, an excitement video, something that connotes a sexual act. Or by Judge Clay's analysis in Brown, something that is not merely the visual depiction of the genitals, but something that takes it further to something in the direction of a sexual act. And the things that Judge Cole, excuse me, Judge Clay, found not to meet the standard. And even, you know, Judge Clay did not get into the underlying lack of a definition of a lascivious exhibition. He was focused purely on the Dost factors and dealt with images very similar to the ones at issue here with the much younger children and concluded that most of those did not meet even a Dost factor analysis in isolation. But the problem is, and as the D.C. Circuit articulated in the Hillary case that we cited, is that the Dost factors, if divorced from the statutory term in which they're supposed to be directed, you know, give no guidance whatsoever. Do you agree that at least some of the pictures satisfy the Dost factors? I think you, obviously, some of the Dost factors come into play on some of them. I mean, they're nude, some of them, but not all of them, which is an important distinction because, you know, which Judge Clay brought out in that case where the limited number he did find met the standard. You know, it was in light of a much larger number, all of which were. I recall that Hillary pretty much rejects the Dost factors. So I don't know to what extent you rely on Hillary, but that doesn't. It does not reject the Dost factors outright. It rejects the Dost factors as a substitute for a definition of the actual term in the statute. Do you argue that we should follow the Hillary case as opposed to our precedent? I do think Hillary is correctly decided and actually follows the series of Supreme Court decisions dating back to the 70s on this very issue. We certainly cannot ignore our precedent. That's right, but you also cannot ignore the Supreme Court precedent, which dictated the result in Hillary. But even setting that aside, Judge Clay's decision in Brown, which is Dost factor based, still results in the same conclusion. I wonder why you are relying on Brown when it lets the jury and it lets us looking at whether this is constitutional and fine, like open up the full context here, right? Brown is going to let us consider under what circumstances they're taking, what the other images, right? We're looking at this group and the different poses that she's made and the different photos. Any statements about these images? We have the text messages. We have the I can't put this in a text message statements. Like the context here, I mean, quite frankly, goes even well beyond the images. I don't think that's right, actually, Your Honor. The context here points in exactly the opposite direction because the context, the limited context, even under a Brown analysis, just ignoring the Supreme Court situation, Judge Clay went through and it's a limited context. It is the circumstances surrounding the creation, which gets the communications, which again Would you agree that would include like the other kind of simultaneously taken photos? Yes, yes, some of which are clothed. Only a minority of which even include the generals. Would you include it? Would you say it includes the communications between your client and the younger women here? I think it does, yes. So all the things that I mentioned are within the limited context that you're asking us to look at Brown. And you may view the context in a particular way, but isn't the jury allowed to look at the context differently? The jury ultimately makes that determination. The problem here is that they were never told what it is that they were determining, other than, oh, here's a list of factors. And they were not told what lascivious exhibition means. And it's got to mean, it can't mean, think about it, if the statute were structured, sexual explicit conduct means sexual intercourse, bestiality, masturbation, sadistic or masochistic abuse, and, oh, well, just any image that depicts the genitals. That would make no sense and would not have been consistent with the Supreme Court precedent talking about these terms against which Congress adopted the statute. So it's got to mean something higher. An offensive representation or description of specific hardcore sexual conduct is the language the Supreme Court used. And that's what it has to be. But that's not the language that Hilly uses that you want us to follow. What Hilly ultimately settles is that it's conduct that connotes actual depiction of the sex act, rather than merely the suggestion that it's occurring. That's Hilly. It says, yeah, anus, genitalia, or pubic area in a lustful manner that connotes the commission of a sexual act or inclination to engage in any type of sexual activity.  Right. Which there's nothing in these pictures other than the fact of what they depict that go that further step. And so if this meets the standard, then any nude picture depicting the pubic area meets the standard. And that can't be for the constitutionality of the statute, but not to mention under the Supreme Court precedent. I'm sorry, I lost my time. I didn't get the chance to get to the other points, but I do have some more. I'm sorry? Thank you, sir. May it please the court, Kevin Kohler on behalf of the United States. I'll focus my comments on the sufficiency and the dose factors, but I'm happy to entertain any questions about either of the other issues. Here the evidence was more than sufficient to find that the defendant sexually exploited Jay when he directed her to take sexually explicit photos of herself in exchange for $500. It's clear he wasn't satisfied with the initial photos. It was clear he wanted more. He told her the specific body parts that he wanted photos. He withheld the money until he got those photos, and then he downloaded those photos, saved them, bragged about them, and pressured the girls for more material. This court's precedent requires us to apply the dose factors here, or it says at least the dose factors are the proper standard for assessing whether a depiction shows the lascivious exhibition of the genitals. Here the evidence was more than sufficient, especially in a sufficiency context, that all these dose factors were met for the 10 photos. 10 photos depicted. What about the argument that there needed to be some definition of lascivious exhibition? So the dose factors are, this court has endorsed, all the circuits other than Hilly have endorsed the dose factors as those guideposts that help the jury understand what is meant by the lascivious exhibition of the genitalia. You know, there's no need to provide an additional term beyond that is what this court has said, and is what the other circuits have said. Even Hilly and the D.C. Circuit walked back that language about hardcore sexual conduct following the denial of the rehearing on Bonk. And here, this isn't even a close case. Hilly was worried about situations where you have a surreptitious recording. Brown was even focused on the case where you might have innocent conduct where the toddler doesn't know they're being photographed, family photographs, surreptitious recordings. Maybe a doctor who's taking photos of his patient's genitalia, and it's not clear if this is for a legitimate medical purpose or part of a sexual exploitation. That's that gap between what the D.C. Circuit says you have to look at and what all the other circuits who have universally rejected Hilly since then have said. We're not even in that possibly gray area. Everything about these photos was geared towards lasciviousness and towards sexual activity. And they were made clearly in service of sexual lasciviousness and the sexual desires of the defendant here. Can I ask you if it's okay with my colleagues here to move on to the 2422B, the kind of definition of sexual activity? I know we have a bunch of different circuit splits going on in the earlier one, although we seem to have weighed in there. And maybe I'm curious to hear your position on what is the test that we should adopt. Is it something in the world of Fugit and Dominguez, and how should we come to that resolution? This court should follow the Fourth and the Eleventh Circuit in Fugit and Dominguez. I don't think the court even has to go that far here. We know from 2427 that whatever the outer bounds of sexual activity as used in 2422B are, at a minimum includes the production of child pornography as defined in 2256. That's the nature of the conduct here. The jury returned guilty verdicts on counts three and four, which dealt with that exact definition. Production of child pornography does not require interpersonal physical contact. That's not a requirement of the statute. Now, if you want to set the outer bounds, I think what defines the outer bounds of the statute is, of course, the plain meaning of sexual activity. If you look at the dictionary definitions of sexual inactivity as the Fourth and the Eleventh Circuit does, you arrive at a definition that says the active pursuit of libidinal gratification or erotic desire. And that would be the plain meaning. Again, production of child pornography easily falls within that, regardless of whether there's interpersonal physical contact. And, of course, now Congress has confirmed that reading. They weighed in in the most recent statutory amendments in December 2023. I don't think you need to consider that. I don't think it would be appropriate. I would only note that the statutory notes for those amendments make clear that Congress was simply clarifying and correcting the Seventh Circuit's erroneous interpretation, rather than making an adjustment to the substantive change in the law. But I think... What do we do with the definition of sexual act from 2246? I think you leave that definition in 2246 where Congress put it and where Congress did not import it into the next chapter. You know, 2423F, which a defendant points to in its briefing, incorporated sexual act to define illicit sexual conduct. Congress did not incorporate sexual act into 2242B. It did not incorporate it into 2427. Sexual act and sexual activity have different meanings. And the very fact that Congress could, when it wants, incorporate 2246 definition, the fact that they didn't do so with respect to sexual activity means it shouldn't be incorporated into that provision either. If the Court has no further questions, we're prepared to rest on our briefs and ask that this Court affirm the convictions. Thank you, Counsel. On the 2422 points, the problem with the government's argument is that that statute used to use the term sexual act. That's how it was originally adopted. What statute? 2422, as did 2423. It was changed in the 90s by Congress to sexual activity for the purpose of making the language uniform because one subsection of 2422 referred to sexual activity and the 2422A, which is the one at issue here, used sexual act. They changed them both so that both were activity. And the legislative... How does this help your argument? Because the legislative... I read in your briefs that you wanted us to import the definition of sexual act from 2246 and apply it here, so how does this help your argument if the previous version of the statute said sexual act but now it says sexual activity? Because Congress at the time in the legislative history made clear that they deemed that change as non-substantive, that the scope of the statute was the same. And the government keeps referring to 2427, the provision that specifically adds production of child pornography to the definition of sexual activity, as somehow supporting its argument when it does exactly the opposite. Doesn't it show it doesn't have to be this interpersonal contact if sexual activity encompasses child pornography? It shows that for... If the underlying unlawful activity is the production of child pornography. Otherwise, if the 2246 definition of sexual act did not apply and if interpersonal contact was not required, there was no point for 2427. The only reason to pass that was this concern, and this is what the legislative history reflects, is oh my goodness, because there could not be and in many cases would not be interpersonal physical contact in a production of child pornography, we'd better make a special statute that includes that within the scope of what can be charged in 2422. They didn't make it like a different crime or a different thing. They put it in the definition. So it's hard to say that the definition writ large now has to include things that require interpersonal physical contact when we have something in the definition itself that doesn't require it. Well, as an exception to what is the otherwise applicable definition. That's not what was charged here. What was charged was an Ohio statute as the underlying unlawful sexual activity, which depictions of minors in videos, nude videos. And the reason is because they couldn't have charged the child pornography because that's separately charged and it would be purely duplicative. So they had to find some other thing, unlawful sexual activity, that is the predicate for 2422. And here, even by Ohio law, it expressly does not include that conduct as within the statutory definition of sexual activity. So we have this weird situation where Congress in the 90s clearly understood sexual act and sexual activity to be synonymous. And in fact so understood that they made a special exception for child pornography because it did not necessarily include interpersonal conduct, physical contact. And then you've got an Ohio statute that doesn't even think this is sexual activity to begin with. So the 2422 is incredible reach and it's an example of general disapproval and just stacking charge after charge all based on the same things and in construing these terms so broadly as to make them all synonymous with each other, which is exhibited most clearly by Count 7, which takes a view of all these text messages or their notices or advertisements for the production of child pornography even though they don't request. Just the text messages don't ask for sexually explicit conduct. And that's an inference based on argued from other evidence of what was intended. The texts themselves don't ask for that. And just to put one-to-one text messages as a notice or advertisement, well then any communication is a notice or advertisement even if it doesn't specifically seek anyone to engage in sexually explicit conduct. And so all the statutes merge with each other and become completely duplicative. And that's why Justice Jackson said it well in her concurrence in the recent case regarding the Trump prosecution that even when we find the conduct morally deplorable, the Constitution requires the narrow and careful construction of the statutes to see whether they actually apply. And that is essential to fair consideration and fair and consistent application of the law to the circumstances to which it was intended. Sorry I'm out of time. We also raised some evidentiary issues as well. Most of these are attempt convictions because none of this actually happened. And there is a constructed, a minimized evidentiary picture of the full circumstances. Thank you, Your Honor. Thank you for your arguments and your briefs. The case has been submitted.